## James C. Whitmore *versus* Nicholas Hogan.

The Statute 1821, c. 117, being the "act to provide for the education of youth," made each school district a "body corporate"; as well those existing *de facto*, as those created by a legal vote of the town; the limits of such as were not already certain, to be defined by the town.

If the town attempts to form two new school districts out of an existing one, and one of them be legally established by the proceedings of the town, its rights will not be affected by a failure to establish the other district in a legal manner at the same time.

Should the town, under an article in the warrant, for calling the meeting, "to see if the town will divide school district No. 2, in some convenient. manner," include a portion of some other district in one of the new ones, if the proceedings would not be strictly legal on the objection of a person aggrieved, yet mere strangers cannot take the objection, to render the whole proceedings void.

When two new school districts are formed from one old one, the title to the existing schoolhouse is in that district within whose territory it falls on the division.

And if the schoolhouse was originally built by money furnished by voluntary subscription, it is the property of the district, where it has been appropriated to and used by the district as a schoolhouse for forty years.

Before school districts were specially authorized so to do by statute, they might make sale of their old schoolhouses, which had become unfit for the use of the district.

EXCEPTIONS from the Middle District Court, REDINGTON J. presiding.

Assumpsit upon a promissory note, dated December 21, 1836, for $105,20, made by the defendant to the plaintiff, and payable on demand with interest. The defence set up was, a want or failure of consideration. It was proved, that the plaintiff was a licensed auctioneer, and as such sold at public auction an old schoolhouse for $100,00, and an old stove and some old furniture for $5,20, on a credit of six months. The defendant was the highest bidder, and the same were struck off to him. At the expiration of the six months the note in suit was given for the articles bid off.

At the trial the plaintiff offered to prove by the testimony of witnesses, that for more than forty years prior to 1836, there had existed distinct school districts with well marked limits,

and particularly that there was a district called the Parker district, whose limits were well understood throughout the town. This was objected to by the defendant, but admitted by the Court.

It was proved that more than forty years before the sale the town assigned one hundred dollars to each of the school districts, of which the Parker district was one, and that the school house was built with this money and money subscribed by individuals, and had been used as a school house for that district until recently before the sale.

The facts are sufficiently stated in the opinion of the Court.

The counsel for the defendant requested the Court to instruct the jury : 1. That a school district cannot prove its existence by reputation. 2. That the committee had no authority by the vote of the district to sell the house. 3. That a school district has no authority to sell its schoolhouse. 4. That inasmuch as the vote of the town, when purporting to divide the original No. 2, did in fact divide two other districts, when the article in the warrant only authorized the division of No. 2, and therefore the south district was not legally constituted.

The presiding Judge declined to give these instructions, but did instruct them, that if they believed the districts had been established, and their limits fixed and known from the early period named by the witnesses, and that the defendant, at the time of giving the note, understood the whole character of the sale, and possessed such mental powers as to render him capable of understanding his contracts, he must be chargeable in this action. The verdict was for the amount of the note and interest, and the defendant filed exceptions.

This was continued *nisi* to be argued in writing, at the May Term, 1843 ; but no arguments have been received by the Reporter.

*Mitchell* and *Randall & Whitman,* for the plaintiff.

*Groton* and *Tallman* and *Sewall,* for the defendant.

The opinion of the Court was drawn up by

SHEPLEY J. — This suit is upon a promissory note made by the defendant and payable to the plaintiff. It was received in payment for an old schoolhouse and some small articles of furniture, sold at auction to the defendant. In defence it is contended, that he did not acquire any title to the property sold, and that he cannot therefore be required to pay the note. The property was sold as that of a school district in the town of Phippsburg. It appears from the exceptions, that a school district *de facto* had existed for more than forty years, called the Parker district; and that a school had been taught from year to year in a schoolhouse situate within it during all that time. Yet it may well be doubted, whether the existence of a school district as a body corporate, capable of taking and holding property, can be proved by parol evidence. There doubtless were school districts having no strictly legal origin, as well as those created by votes of the towns, at the time of the passage of the act of 1821, c. 117. Before that time, there was no legislative declaration, that they should be considered as bodies corporate. It was provided by the seventh section of that act, that "each and every school district in this State is hereby made a body corporate." This language is sufficiently comprehensive to embrace all districts, as well those existing only *de facto*, as those created by a legal vote of the town. And it is not probable, that it was the intention of the legislature to make those only bodies corporate, which could be proved to have had before that time a strictly legal existence. The action of the law was upon all actually existing districts, without regard to the manner in which they were brought into existence; and power was given to the towns to determine their number and define their limits. Bodies corporate may be known by different names, and the case finds, that the Parker district before the year 1836 had been designated in the town books as district No. 2.

In the warrant for calling the annual town meeting of that year there was an article inserted, " to see if the town will divide school district No. 2 in some convenient manner, so as

better to accommodate the scholars, and produce a more general attendance." At that meeting the town voted to divide it, and to establish that part of it north of mill creek, including two other persons named, as one district, "and those inhabitants, who live south and east of said mill creek as far as James Daley's and David Wyman's south line, to constitute another school district." The case finds, that these districts were afterward called north district No. 2, and south district No. 2 until the name of the latter was by a vote of the town, at the annual meeting in 1838, denominated the Parker district. It is objected, that the division was ineffectual, because the districts were not defined by territorial limits. That they included persons by name and not the lands occupied by them. If this be the necessary construction, so far as it respects the two persons included in the north district, there can be no reasonable doubt, that the intention was to form the south district by territorial limits; and if this was legally established the failure to establish another district in a legal manner at the same time could not affect its rights. And it is also objected that the vote was inoperative, because the rights of other districts were affected by it, when the article in the warrant did not disclose such an intention. If this objection had come from any other school district complaining, that its rights had been infringed, or from any person aggrieved by an alteration of the limits of the districts, it might require a more serious consideration. But when it is perceived, that the "subject matter," has been sufficiently stated in the warrant to enable the inhabitants to know, what was designed by the dissolution of one school district and the establishment of two others, requiring that their limits should be defined; to determine, that they must be restricted in doing it to the exact limits of the old one, or that their proceedings would be wholly void, would not be acting upon the rule, that the proceedings of towns should receive a liberal construction, that they may if possible, be supported.

The south district No. 2, being considered as legally established, the inquiry arises, whether it was the owner of the old

schoolhouse, situate within its limits. A like question was presented in the case of the inhabitants of school district No. 1 in *Stoneham* v. *Richardson*, 23 Pick. 62. The Court finding that the legislation had been very defective, say, that "having no definite rule in legislative enactments, or adjudged cases, to guide us, we are compelled to settle the question by such lights as we may derive from analogy." The decision was, that when new districts are formed by abolishing old ones, "the legal title to the existing schoolhouses vests in those of the new districts within whose territory they may happen to fall." The legislation respecting the title to schoolhouses has been equally defective in this State, and it is not perceived, that a construction more satisfactory can be adopted. The manner in which the schoolhouse was originally built, inasmuch as it had been appropriated to and used for so long a time by the Parker district as to be considered its property, can make no difference. As by this construction, the schoolhouse, on the creation of the south district No. 2, became its property, the vote of the north district No. 2, respecting it, was wholly inoperative. A meeting of the south district No. 2, was called by a warrant from the selectmen on the 28th of May, 1836 ; but it is objected, that this was not a legal meeting, because the warrant does not appear to have issued on the application of three or more of the freeholders of the district. If this objection may be considered as a valid one, and as properly presented by the bill of exceptions, the vote of the district at the meeting on July 10, 1838, "to instruct the plaintiff to pursue the suit against Mr. Hogan in favor of the old schoolhouse," would amount to a ratification of the proceedings of the former meeting, so far as they related to the schoolhouse, and to an approval of the sale of it by their committee then chosen.

It is further insisted, that the school district had then no power to sell its schoolhouse. That it had not the power, as contended, to build schoolhouses for sale, or to sell the one existing for purposes of gain, or for any other purpose than to carry into effect the powers granted by the statute, may be ad-

mitted. But to deny to a district possessed of an old school-house, of no use where it is situated, and too defective to be safely removed to a more central position, the right to sell it for the purpose of applying the proceeds of the sale to the erection of a new one, would be an unnecessary and burden-some restriction of the powers granted, to erect, remove, re-pair, or purchase a schoolhouse. The district is, by the act, entitled to hold any estate, real or personal, and to apply the same agreeably to the provisions of the act; and if it have personal estate and desire to apply it to the erection of a schoolhouse, it may use any proper means to effect the object. Could it have been the intention of the legislature, that an old and useless schoolhouse should stand in its ruinous and un-sightly condition, for want of power to sell it, or even the materials composing it? In this instance the case finds, that the house had been occupied for more than forty years, and considering, that it was to be removed, if longer used, there does not appear to have been any unreasonable exercise or abuse of the powers granted. The jury have not found, that any improper practises were resorted to for the purpose of in-ducing the defendant to purchase, or that he was not in a con-dition to understand the contract into which he was entering. He appears to have given this note for the amount of the pur-chase money after he had an opportunity to reflect upon the whole proceedings for six months. The defence, that it was given without consideration, fails, and

> *The exceptions are overruled.*